## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARL MOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04-cv-0570-MJR |
| | ) | |
| DARRELL WESTERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

## I. Introduction

In August 2004, inmate Carl Moss filed suit under 42 U.S.C. § 1983, alleging that Defendants (officers and staff employed by the Illinois Department of Corrections ("IDOC") deprived him of his constitutional rights by putting him in segregation, violating procedures during a disciplinary hearing and retaliating against him for filing a grievance. Only Moss's claim that Darrell Westerman retaliated against him in violation of the First Amendment survived threshold review.

The case proceeded to a two-day jury trial before the undersigned Judge, beginning on September 8, 2008. On September 9, 2008, the jury returned a verdict in favor of Moss and against Westerman. On September 23, 2008, Westerman renewed his motion for judgment as a matter of law or, in the alternative, for a new trial. For the reasons stated below, the Court **DENIES** that motion (Doc. 122).

## II. Analysis

Westerman tenders four grounds to support his request: (1) the record was insufficient to support a finding of retaliation in violation of Moss's First Amendment rights; (2)

Westerman is entitled to qualified immunity; (3) the Court erred in not giving an instruction to the

jury that prison rules against insolence are constitutional; and (4) the Court erred in not given an

instruction to the jury referencing the balancing test in *Turner v. Safley*, 482 U.S. 78 (1987).

**FEDERAL RULE OF CIVIL PROCEDURE 59(a)** provides that in any action where there

has been a jury trial, a new trial may be granted "for any of the reasons for which new trials have

heretofore been granted in actions at law in the courts of the United States." That language has been

interpreted to mean that a district court may grant a new trial only if the jury's verdict was against

the manifest weight of the evidence, or a new trial is necessary to prevent a miscarriage of justice.

*See Romero v. Cincinnati, Inc.*, **171 F.3d 1091, 1096 (7th Cir. 1999)**; *Lonsdorf v. Seefeldt*, **47**

**F.3d 893, 897 (7th Cir. 1995)**; *Sokol Crystal Products, Inc. v. DSC Communications Corp.*, **15**

**F.3d 1427, 1432 (7th Cir. 1994)**.

> The law of this Circuit holds:
>
> A new trial may be granted only if the verdict is against the clear
> weight of the evidence.... **"[W]e will not set aside a jury verdict if
> a reasonable basis exists in the record to support that verdict...."**
> The evidence must be viewed in the light most favorable to the
> prevailing party and issues of credibility and weight of evidence are
> within the purview of the jury.

*Carter v. Chicago Police Officers*, **165 F.3d 1071, 1079 (7th Cir. 1998)(emphasis added).** *Accord*

*Cefalu v. Village of Elk Grove*, **211 F.3d 416, 424 (7th Cir. 2000).**

Westerman contends that the jury's verdict was against the manifest weight of the

evidence. To satisfy this standard, he must demonstrate that no rational jury could have rendered

a verdict against him. *King v. Harrington,* **447 F.3d 531, 534 (7th Cir. 2006) (citing** *Woodward*

*v. Correctional Medical Services of Illinois, Inc.*, **368 F.3d 917, 926 (7th Cir. 2004)).**

Under this standard, the Court must view the evidence in the light most favorable to

Moss, "leaving issues of credibility and weight of evidence to the jury." ***King***, **447 F.3d at 534 (citing *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004)**.

Here, the jury's verdict was *not* contrary to the manifest weight of the evidence. Nor is the record is devoid of a reasonable basis to support the verdict.

At trial, Moss testified that he was standing in line to go to the law library with his legal papers in an envelope, which he believed complied with Menard's policy. Tr. 9: 5-7; 10:21-24. Moss stated that he was confronted by Westerman who took the envelope and "tried to dump the envelope in front of me." Tr. 11:13-16; 12:14-15. Moss did not touch the envelope but grabbed the papers so they wouldn't be blown around in the wind. Tr. 12:24-13:3. Moss testified that he politely and nonconfrontationally attempted to show Westerman the bulletin, which he believed allowed him to carry his papers in an envelope, and asked Westerman how this violated the rules. Tr. 14:2-18. Moss's testimony continued -

> Q. So when you said that to Mr. Westerman, how did he respond?
> A. He grabbed it from me and crunched it up into a ball and said, "I run this. If you don't like it bring a grievance."
> Q. How did you respond?
> A. I never had a conversation with the man before. I didn't even know his name. I said, "As you wish, sir." And I looked at his ID to see his name and bowed my head and said, "As you wish, Lieutenant Westerman."
> Q. When you said, "As you wish, sir, Lieutenant Westerman," is it fair to say you were agreeing with him that you would in fact file a grievance?
> A. I didn't want any more words with him. I was trying to back away. You're the boss. No problems. As you wish, sir. Tr. 14:24-15:12.

According to Moss's testimony, Westerman's response was "That's it. Cuff up." Tr. 15:18. Westerman told other officers to return Moss to his cell. Tr. 15:22-24. Westerman appeared at Moss's cell door approximately ten minutes later and escorted him to segregation. Tr. 16:5-8. Moss testified that he overheard Westerman say, "This will teach him to write a grievance about me." Tr.

16:23. Subsequently, Westerman issued a disciplinary report charging Moss with violation of the rules and insolence. Moss was found guilty of the charges and was sentenced to one month in disciplinary segregation.

Moss's description of the incident was supported by inmates Clayborn Smith and Richard Lenius. Smith testified that he was in line with Moss to go to the library and standing within two or three feet of him. 53:6-11; 62:9-10. He testified that Moss did not reach out towards Westerman at any time and that Moss was not insolent. Tr. 58:10-12; 62:19-23. Lenius was also in line with Moss to go to the library. Tr. 65:5-8. Like Moss, Lenius believed that the new policy allowed inmates to bring materials to and from the library in a white envelope. Tr. 68:3-11. Lenius testified that Westerman took Moss's envelope from him, turned it over and attempted to "dump" the contents on the ground. Tr. 69:6-12. He stated that Moss tried to catch the papers before they fell to the ground but did not touch Westerman, did not appear angry or belligerent and did not attempt to grab the envelope. Tr. 69:21-70:8. Lenius testified that Moss did not act in an insolent manner. Tr. 73:23-74:4.

Westerman provided a different history of the event. He testified that whenever he saw inmates carrying envelopes in the library line he always confiscated them and handed the legal material back. Tr. 123:7-11. Westerman stated he wrote the insolence ticket because Moss grabbed the envelope and talked in a loud manner and not because Moss had stated that he intended to write a grievance against him. Tr. 123:13-15; 124:6-10 124:13-16. On the disciplinary report, Westerman also indicated that Moss had violated the rules because envelopes are contraband. Tr. 124:21-125:2. He testified that he felt threatened because Moss became insolent and attempted to grab the envelope from him. Tr. 127:17-20. However, in his deposition in April 2008, Westerman indicated that while

trying to grab something from staff was a security issue, he did not feel physically threatened by Moss. Tr. 128:15-23.

Major Thomas Maue testified that an inmate who asked about a policy could be - but was not necessarily - insolent, depending on his gestures and attitude. Tr. 84:15-85:2. Maue indicated that insolence was a judgment call but grabbing property back from a corrections officer would be insolence. Tr. 93:12-19; 93:25-94:3. Maue did not observe the incident between Moss and Westerman.

Lieutenant Andrew Wilson described the adjustment committee procedure for dealing with disciplinary reports. Tr. 101, *et seq.* Wilson agreed that the policy at issue permitted the use of plain white envelopes, but the report written by Westerman indicated that Moss's legal papers were in "a white express mail envelope in violation of the rules." Tr. 110:6-16. Wilson heard Moss's side of the story and found him guilty of all of the offenses with which he was charged based solely on the disciplinary report written by Westerman. Tr. 114:8-15. Wilson did not observe the incident between Moss and Westerman.

When the resolution of a plaintiff's claim depends on the credibility of witnesses' testimony, "this credibility judgment is best left to the finder of fact." ***Collier v. Budd Company*, 66 F.3d 886, 893 (7th Cir. 1995)**. "[A]s finder of fact and weigher of credibility, [a jury] has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." ***United States v. Thompson*, 359 F.3d 470, 479 (7th Cir. 2004) (quoting *United States v. Abel*, 469 U.S. 45, 52 (1984)**. This case rested largely on the jury's credibility assessment of Moss and Westerman . Either the jury believed Moss's version of the incident, or they believed Westerman's. There is ample evidence in the record to support the jury's finding that

Westerman retaliated against Moss in violation of Moss's First Amendment rights because he believed that Moss intended to file a grievance against him. Stated another way, a rational jury certainly could have found in favor of Moss and against Westerman. A reasonable basis exists in the evidentiary record to support the jury's verdict. The verdict was not contrary to the manifest weight of the evidence.

### *Qualified Immunity*

Westerman previously raised the defense of qualified immunity in his motion for summary judgment (Doc. 45). The Court adopted Magistrate Judge Frazier's Report and Recommendation and found that the decision of whether a ticket was given for insolent behavior rather than in retaliation for the protected act of filing or threatening to file a grievance was for the trier of fact rather than a matter for summary judgment.

Qualified immunity is not simply a defense to liability but also provides immunity from suit. *Tun v. Whitticker,* **398 F.3d 899, 901 (7th Cir. 2005) (citing** *Saucier v. Katz***, 533 U.S. 194 (2001)**. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982);** *Knox v. Smith***, 342 F.3d 651, 657 (7th Cir. 2003),** *cert. denied***, 540 U.S. 1183 (2004).**

In determining whether qualified immunity applies, the Court engages in a two-step inquiry. First, viewing the facts in the light most favorable to the plaintiff, the Court determines whether the official violated a constitutional right. If the answer is yes, the Court then asks whether that right was clearly established at the time of the violation. *Tun***, 398 F.3d at 901-02.** *Accord Baird v. Board of Educ. for Warren Community Unit School Dist. No. 205,* **389 F.3d 685,**

**696 (7th Cir. 2004).**

For a right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Tun*, **398 F.3d at 902**. In other words, in light of the pre-existing law, the unlawfulness of the official's action must be apparent. *Id.* **(citing** *Hope v. Pelzer*, **536 U.S. 730, 739 (2002)**. The proper question is "whether the state of the law [at the time of the incident] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope*, **536 U.S. at 741**.

With those standards in mind, the Court turns to the facts of the instant case. Westerman contends that it would represent a new announcement of law if the Court finds that a prison official can be liable for initiating disciplinary proceedings when he believes an inmate has been insolent or for filing a report required by constitutionally valid rules of the Department.

Westerman misstates Moss's cause of action. Moss does not contend that a prison official can be liable for initiating disciplinary proceedings when he believes an inmate has been insolent. Nor does he contend that an official can be liable for filing a report required by valid Department rules. What Moss does contend is that when proceedings are initiated or reports filed *in retaliation* for a constitutionally protected act, the official can be held liable.

It is beyond dispute that inmates are entitled under the First Amendment to file grievances and lawsuits and that officers may not retaliate against them for exercising that right. *Walker v. Thompson*, **288 F.3d 1005, 1008-09 (7th Cir. 2002)**; *see also Babcock v. White*, **102 F.3d 267 (7th Cir. 1996)**; *Cain v. Lane*, **857 F.2d 1139 (7th Cir. 1988)**. Clearly, this right has been established for quite some time. Moreover, Westerman was specifically aware that Moss was allowed to write a grievance against him and that he could not retaliate against him for "exercising

his right of free speech." *See* Tr. 124:13-125:6. For these reasons, the Court denies Westerman's motion as to qualified immunity.

### *Jury Instruction*

Westerman raises two issues regarding Defendant's Proposed Jury Instruction No. 16, which he tendered and the Court refused. The instruction referenced the balancing test in *Turner v. Safley*, 482 U.S. 78 (1987), and stated that prison rules against insolence are constitutional. Westerman does not develop these issues in his memorandum; however, the Court has carefully reviewed the jury instruction conference transcript and the tendered instruction at issue.

At the conference, Westerman's counsel contended that Westerman's actions were reasonably related to legitimate penological interests and that the jury had not been instructed on the *Turner* balancing test. Moss's counsel responded that Plaintiff's Proposed Jury Instruction No. 1 appropriately addressed the claim and the burden of proof in this case. She contended that Moss was not insolent and did not violate a rule.

The Court agreed that Plaintiff's Proposed Jury Instruction No. 1 appropriately addressed Moss's claim and the burden of proof. The Court declined to give the instruction with the "legitimate penological interest" language for the reasons indicated by Moss's counsel but also because there was no significant testimony in the case on what is or is not a legitimate penological interest, and the Court did not want the jury to speculate. The Court determined that Westerman's proposed instruction included language that was surplusage at best and confusing at worst.

Westerman has not met his burden to secure a new trial based on an allegedly erroneous jury instruction. To receive a new trial on this ground, the movant must demonstrate "both that the instruction[] did not adequately state the law and that the error was prejudicial to

[him] because the jury was likely to be confused or misled." ***United States v. White*, 443 F.3d 582, 587-88 (7th Cir. 2006) (citing *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004)**. When assessing whether prejudice has resulted, the Court must consider the instructions as a whole, along with *all* the evidence and arguments in the case, and then decide whether the jury was misinformed about the applicable law. ***White*, 443 F.3d at 587-88 (quoting *Boyd*, 384 F.3d at 894).**

Westerman has not demonstrated the inadequacy of the instruction given to the jury. And he has certainly not shown that he was prejudiced by jury confusion (resulting from the Court's refusal to give his Proposed Instruction No. 16 or otherwise). A new trial is not warranted based on either of the challenged instruction rulings.

### III.  Conclusion

For all these reasons, the Court **DENIES** Defendant Westerman's renewed motion for judgment as a matter of law or, in the alternative, for a new trial (Doc. 122).

**IT IS SO ORDERED.**

**DATED this 29th day of January, 2009**

<u>**s/Michael J. Reagan**</u>
**MICHAEL J. REAGAN**
**United States District Judge**