# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL MOSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 04-cv-0570-MJR |
| | ) |
| DARRELL N. WESTERMAN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

On August 16, 2004, Carl Moss filed suit under 42 U.S.C. § 1983, alleging procedural irregularities and denial of due process in a disciplinary hearing as well as retaliation for filing grievances. A jury trial began on September 8, 2008, on Moss's sole surviving claim - that Darrell Westerman retaliated against him by fabricating facts described in a disciplinary report after Moss questioned Westerman's interpretation of a new policy and expressed a willingness to grieve his concerns. Trial culminated in a September 9 verdict in favor of Moss and against Westerman for nominal damages in the amount of $1.00 (Doc. 115). The same day, the Court entered judgment on the verdict (Doc. 118).

On November 25, 2008, Moss moved the Court to expunge the disciplinary report at issue from his record and to restore good conduct credit for the days he was wrongfully kept in segregation at Menard Correctional Center (Doc. 152). He contended that, based on the jury verdict in his favor, he was not guilty of a rule violation or any act of insolence. After careful analysis, the Court denied Moss's motion (Doc. 161). Moss now moves the Court for reconsideration of that Order or, in the alternative, for leave to appeal and appointment of counsel (Doc. 165).

Although technically a "motion to reconsider" does not exist under the **FEDERAL RULES OF CIVIL PROCEDURE**, the Seventh Circuit has held that motions challenging the merits of district court orders and judgments should be treated as filed under either Rule 59(e) or Rule 60(b). *See, e.g., Mares v. Busby*, **34 F.3d 533, 535 (7th Cir. 1994)**. "[W]hether a motion filed within 10 days of the entry of judgment should be analyzed under Rule 59(e) or Rule 60(b) depends on the *substance* of the motion, not on the timing or label affixed to it." ***Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008), *citing Borrero v. City of Chicago,* 456 F.3d 698, 701-02 (7th Cir. 2006) (clarifying "that the former approach - that, no matter what their substance, all post-judgment motions filed within 10 days of judgment would be construed as Rule 59(e) motions - no longer applies") (emphasis in original)**. "Neither the timing of the motion, nor its label (especially when drafted by a *pro se* litigant), is dispositive with respect to the appropriate characterization of the motion." ***Id., citing Jennings v. Rivers,* 394 F.3d 850, 855 (10th Cir. 2005)**.

Moss based his motion for reconsideration on errors of law, a basis encompassed by Rule 59(e). Accordingly, the Court will treat Moss's motion as one brought under Rule 59(e). *See **id*. at 493-94, *citing Osterneck v. Ernst & Whinney,* 489 U.S. 169, 174 (1989) (noting that Rule 59(e) encompasses reconsideration of matters decided on the merits); *United States v. Antonelli,* 371 F.3d 360, 361 (7th Cir. 2004) (explaining that courts should look to the substance, not the label, of a *pro se* filing to determine its character)**.

Construing Moss's motion as brought pursuant to Rule 59(e), it is clear that he cannot prevail. Under Rule 59(e), the Court can alter or amend a judgment only if the plaintiff can demonstrate a manifest error of law or present newly discovered evidence. ***Id., citing Sigsworth v. City of Aurora,* 487 F.3d 506, 511-12 (7th Cir. 2007)**.

Moss has presented no newly discovered evidence, but he attempts to demonstrate a manifest error of law on four grounds: (1) that *Antonelli*, which the Court cites in its January 14, 2009, Order, applies only to pretrial detainees; (2) that the Court has the authority to grant the injunctive relief sought - expungement of his disciplinary ticket, restoration of good time credits, and, generally, reformation of the grievance procedure for prisoners - under *Hutto v. Finney* **437 U.S. 678, 687 (1978)** and *Swann v. Charlotte-Mecklenburg Bd. of Ed.,* **402 U.S. 1 (1971)**[1]; (3) that the Court erred and demonstrated bias in suggesting to the jury that only nominal damages were available, in its handling of his claim that the State was denying him medication at the time of trial and in its handling of the jury's note; and (4) that IDOC should be considered as a party to this action because it employs Westerman and approved his acts (an official capacity rather than individual capacity suit).

While Moss is correct that the plaintiff in *Antonelli* was a pretrial detainee, he is incorrect in his assertion that "a completely different set of rules apply to a pre-trial detainee." When discussing Antonelli's complaints regarding the grievance procedure, the Seventh Circuit stated, "With respect to the Due Process Clause, any right to a grievance procedure is a procedural right, not a substantive one. Accordingly, a *state's inmate grievance procedures* do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, **81 F.3d at at 1430 (internal citations and citation omitted) (emphasis added)**. In so finding, the appellate court relied in part on *Shango v. Jurich,* **681 F.2d 1091, 1101-02 (7th Cir. 1982)**, a case that involved a state prisoner. In sum, although the rights of a pretrial detainee and those of a state inmate differ in some respects, Moss has failed to demonstrate that the appellate court's findings in *Antonelli* are limited to pretrial detainees and, accordingly, are not applicable to him.

---

[1]Moss provided only partial case cites, but, in an effort to fairly construe Moss's claims, the Court researched these cases and provides the cites in full.

Moss makes a second argument regarding *Antonelli*: that its conclusions are rendered moot by the enactment of the Prison Litigation Reform Act ("PLRA"), **42 U.S.C. § 1997e**. His argument appears to be that where the state lacks a meaningful grievance procedure, the PLRA's mandate that a prisoner must exhaust available administrative remedies is a "fiction" and a "misfortune." The findings of the appellate court in *Antonelli* are not in conflict with the PLRA. Under the Due Process Clause, a state inmate has a procedural, but not a substantive, right to a grievance procedure, and must exhaust those procedures that are available - which is consistent with both *Antonelli* and the PLRA.

Moss next contends that the Court has the authority to grant the injunctive relief sought - expungement of his disciplinary ticket and reformation of the grievance procedure for prisoners. Unlike the circumstances in *Hutto,* here there is no "long and unhappy history of the litigation" to take into account and no failure by the state to adequately comply with Court orders. **437 U.S. at 687**. Moss is dissatisfied with the state's grievance system and considers it to be a case of "the fox guarding the hen house." He has not, however, demonstrated ongoing constitutional violations, such as those found by the Court in *Hutto*, where "the inmates' diet, the continued overcrowding, the rampant violence, the vandalized cells, and the 'lack of professionalism and good judgment on the part of maximum security personnel' ... continued to violate the prohibition against cruel and unusual punishment." *Id***. at 686**.

*Swann,* the second case cited by Moss, is a school desegregation case in which the Supreme Court found, among other things, that it was within the equitable, remedial discretion of the court to fashion a remedy where the school district had defaulted in its duty to come forward with an acceptable plan of its own for desegregating schools. **402 U. S. 1 at 24-25**. Therein, the Court stated, "In seeking to define even in broad and general terms how far this remedial power

extends it is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary. Judicial authority enters only when local authority defaults." ***Id*. at 16**.

Moss's claims regarding inmate grievance procedures do not state a viable constitutional claim. As explained above, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." ***Antonelli,* 81 F.3d at 1430**. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. ***Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982)**. Under these standards, this Court's broad, remedial powers do not extend to expunging a five-year old disciplinary ticket or remaking the Illinois state prison grievance system.

In his final argument on this issue, Moss contends that ***Green v. Mansour*, 474 U.S. 64 (1985)**, is inapplicable because it "is not a prison case and deals exclusively with welfare benefits." The holding in ***Green*** is not so narrow as Moss suggests and is frequently cited for the proposition that "a federal court may issue equitable relief when there is an ongoing *or impending violation* of federal law." ***Vickery v. Jones,* 878 F.Supp. 1179, 1185 (S.D.Ill. 1995)**, *citing **Watkins v. Blinzinger,* 789 F.2d 474, 484 (7th Cir. 1986)***, *cert. denied sub nom. **Diamond v. Blinzinger,* 481 U.S. 1038 (1987)***, *citing **Green,* 474 U.S. 64 (emphasis added in *Vickery*)**. That holding does not depend on the subject matter of the case before the Court - whether a prisoner civil rights action or a class action on the methods for determining welfare eligibility. Because the challenged disciplinary ticket was issued more than five years ago, there is no ongoing or impending violation of federal law that warrants this Court's providing equitable relief.

Moss next contends that the Court erred and demonstrated bias in "suggesting the award of just $1" where "the decision for damage amount could be anything from $1 to $1 billion." The limitation on damages in prisoner cases not involving physical injury is part of the PLRA. Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Calhoun v. DeTella,* **319 F.3d 936, 940 (7th Cir. 2003),** *quoting* **42 U.S.C. § 1997e(e)**. "Although § 1997e(e) would bar recovery of compensatory damages 'for' mental and emotional injuries suffered, the statute is inapplicable to awards of nominal or punitive damages for the [constitutional] violation itself." *Id.* **at 941**. Only nominal and punitive damages were available to Moss. The Court gave the punitive damage instructions tendered by Plaintiff. *See* Doc. 116, Plaintiff's Proposed Instructions Nos. 3, 5. The issue of punitive damages was sent to the jury, which assessed them at "$ 0." Doc. 115, Verdict Form A. The jury awarded nominal damages. *Id*. Accordingly, the Court applied the appropriate law, did not err and showed no bias regarding the issue of damages available in this case.

Moss's second claim of error or bias relates to the Court's handling of his claim that the State denied him medication at the time of trial. The Court previously considered this issue and sees no need to revisit it, except in brief. In its December 17, 2008, Order, the Court found that this issue was raised at trial and that all parties agreed to proceed (Doc. 156). As the Court stated, a continuance was the only remedy available to the Court to resolve this issue. Moss agreed to proceed, and his objections were thereby waived. *See, e.g., Walters v. Central States Coca-Cola Bottling Co.,* **2001 WL 1263680, 2 (N.D.Ill. 2001)**.

Similarly, the Court finds no need to revisit beyond a brief recitation Moss's third claim of error or bias, which relates to the Court's handling of the jury's note. Moss contends that

the Court erred in refusing to tell the jury, in response to their note, that he had paid all fees and costs. However, the Court's response to the jury's note was both procedurally and substantively correct. The Court allowed counsel to respond to the note before resolving the question and communicated its answer to the jury in open court. *See United States v. Degraffenried*, **339 F.3d 576, 580 (7th Cir. 2003) (citing *Rogers v. United States*, 422 U.S. 35, 39 (1975))**. It would have constituted error for the Court to state that Moss had paid the fees and costs where Moss could recover those expenses if the jury found in his favor. That this was the correct response was ultimately borne out: Moss prevailed and recovered fees and costs allowable under § 1983.

Lastly, Moss again raises the issue that IDOC should be considered as a party to this action because "Westerman ... and the IDOC are one and the same for purposes of this lawsuit, [sic] one need only examine who is paying for [his] defense." As Westerman points out, Eleventh Amendment immunity insulates the State from suit and protects its personnel in their official capacities from damage suits. *Stoner v. Wisconsin Dept. of Agriculture, Trade and Consumer Protection,* **50 F.3d 481, 482 (7th Cir. 1995)**. This immunity is not abrogated by its decision to indemnify its employees for damages. *Id*. The judgment was against Westerman in his individual capacity only, and injunctive or other equitable relief are not available against the State, a non-party. *U.S. v. Kirschenbaum,* **156 F.3d 784, 794 (7th Cir. 1998) (citing Fed. R. Civ. P. 65(d);** *Alemite Manufacturing Corp. v. Staff*, **42 F.2d 832 (2d Cir. 1930) (L. Hand, J.) ("no court can make a decree which will bind any one but a party") (additional citations omitted)**.

For all of these reasons, the Court **DENIES** Moss's motion for reconsideration in the main and will consider it in the alternative. Moss seeks leave to appeal "all issues" to the Seventh Circuit Court of Appeals. Moss did not, however, file a request for the issuance of a certificate of appealability or an affidavit of indigency. Construing the motion for leave to appeal to include both,

the Court will deny him leave to proceed in forma pauperis on appeal and decline to issue a certificate of appealability.

Motions for pauper status on appeal are governed by **28 U.S.C. § 1915**. As amended by the PLRA, § 1915 delineates three grounds on which a court can deny pauper status to a prisoner appellant: (1) the prisoner has not established his indigence; (2) the appeal is taken in bad faith; and (3) the prisoner already has "three strikes."[2] **§ 1915(a)(2); § 1915(a)(3); § 1915(g).** ***See also Pate v. Stevens*, 163 F.3d 437, 438 (7th Cir. 1998).**

**Federal Rule of Appellate Procedure 24(a)** similarly requires that the appellant be indigent and that the appeal be taken in good faith. Additionally Rule 24 requires the appellant to outline his "entitlement to redress" and the issues that he intends to present on appeal. **FED. R. APP. PROC. 24(a)(1)(B), (a)(1)(C).** In *Pate*, the Seventh Circuit clarified "the district court's responsibilities when making good faith determinations under Federal Rule of Appellate Procedure 24." *Pate*, **163 F.3d at 438.** Reiterating that the standard governing *in forma pauperis* on appeal is more liberal than the standard governing certificates of probable cause (now "certificates of appealability"), the Seventh Circuit "caution[ed] district courts not to apply an inappropriately high standard when making good faith determinations." ***See Lee v. Clinton*, 209 F.3d 1025, 1026 (7th Cir. 2000) (noting that the common legal meaning of the term "bad faith" is "to sue on the basis of a frivolous claim, which is to say a claim that no reasonable person could suppose to have any merit").**

---

[2] Section 1915(g) prohibits a prisoner from appealing if he has "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States, that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

Upon review of the record, which includes Moss's affidavit in support of his motion to proceed *in forma pauperis* in the underlying case and Magistrate Judge Frazier's January 15, 2008, Order finding Moss to be indigent and appointing counsel, it is clear that Moss is indigent. Upon further review, Moss does not have "three strikes" as defined under **§ 1915(g)**. Therefore, this Court is left to determine whether Moss's appeal is taken in good faith.

Moss offers no specific grounds for appeal, stating that he seeks to appeal on all issues. Thus, Moss has specified no legal or factual errors made by this Court that would evidence a good faith basis for an appeal.

In the opinion of the undersigned, it would be difficult for Moss to find such errors given the claims raised and views expressed in this case. Moss's claims have been exhaustively considered by the Court. His case was tried to a jury, and the jury awarded him nominal damages. He is not satisfied with that outcome but has failed to establish that he is entitled to the other types of relief he sought. Viewed in the light mandated by the appellate rules and Seventh Circuit case law, the Court finds that Moss's appeal is not taken in good faith. For these reasons, the Court will also deny Moss's motion for appointment of counsel.

Accordingly, the Court **DENIES** Moss's motion for reconsideration of the Court's January 14, 2009, Order and **DENIES** Moss's alternative motion for leave to appeal in forma pauperis and for appointment of counsel (Doc. 165).

**IT IS SO ORDERED.**

**DATED this 11th day of May, 2009**

                                                  **s/Michael J. Reagan**
                                                  **MICHAEL J. REAGAN**
                                                  **United States District Judge**